IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>TYSON DANIEL LINGELBACH,<br><br>　　　　　　　　Defendant. | CR 21-115-BLG-SPW<br><br><br>ORDER |

Before the Court is Defendant Tyson Lingelbach's Motion to Suppress. (Doc. 16). Lingelbach seeks to suppress all evidence discovered from the search of his vehicle by the Billings Police Department on April 16, 2021, arguing that the search was illegal under the Fourth Amendment of the United States Constitution. (Doc. 16 at 2). The Government argues that the search was a valid protective sweep and therefore legal. (Doc. 21 at 1-2). The Court held a hearing on the motion on July 29, 2022. (Doc. 27). At the hearing, Officer Brett Hilde of the Billings Police Department testified, as did Defendant Lingelbach. For the following reasons, the Court denies the motion.

## I.    Background

Around 2:00 a.m. on April 16, 2021, the Billings Police Department received a noise complaint regarding a parked pickup truck loudly playing music

1

in a residential neighborhood on a weeknight.  Officer Brett Hilde was working

patrol and was dispatched to the location of the complaint.  Hilde pulled up behind

the truck and observed a person sitting in the front seat.   Hilde did not activate his

lights or siren as he approached.  Hilde got out of his car and moved toward the

truck.  As he approached, he saw the Defendant sitting in the driver's seat and

noticed a long gun sitting next to the Defendant.  Hilde ordered Defendant out of

the vehicle and, after a nondescript reaching movement, Defendant complied and

exited the truck.

Defendant testified that he was fixing the stereo in his truck, leading to the

noise complaint, and that he was outside after an argument with his significant

other.  He stated that the movement Hilde observed was Defendant moving items

in his lap to prevent them from falling when he stood up.  These items apparently

included pliers, cigarettes, and a cell phone.  Defendant denied reaching for the

gun at any time.

Officer Hilde was alone, so he decided to handcuff Defendant and place him

in the rear of Hilde's car.  Defendant verbally identified himself and explained that

he did not have his physical ID on him.  Around the same time Hilde detained

Defendant, a second officer, Officer Strobel, arrived on the scene to assist.  The

officers ran the truck's plates and found that they did not match.  The officers also

found outstanding warrants for Defendant but chose not to arrest.  Hilde chose to

2

unload and disarm the long gun before allowing Defendant to return to the vehicle. As he handled the gun, he believed that the barrel appeared to be impermissibly short. Hilde confirmed this suspicion on scene and confiscated the gun.

## II.   Legal Standards

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. am. IV; *see Terry v. Ohio*, 392 U.S. 1, 8 (1968). Searches occurring outside the judicial process are per se unreasonable, subject only to a handful of narrow exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001). One such exception is for officer safety. During a traffic stop, a search of the passenger compartment of a vehicle is permissible if the officer possesses a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). The key issue is whether a reasonably prudent person in the circumstances would believe that his safety is in danger. *Id.* at 1050. A suspect is no less dangerous simply because he is not arrested during the stop. *Id.*

The Ninth Circuit has stated that all that is required for a protective search under *Terry* is a reasonable suspicion that the suspect is armed. *United States v. Orman*, 486 F.3d 1170, 1176 (9th Cir. 2007). In *Orman*, the court emphasized the

3

need for officers to be able to pursue their work without fear of violence and that, where the weapon is readily accessible, limited protective steps are allowable. *Id.* at 1177-78. The need for a protective search applies regardless of whether carrying a concealed weapon violates state law. *Id.* at 1177 (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)). Likewise, the Ninth Circuit has authorized limited vehicle searches for weapons where a suspect would gain immediate control of a gun in the car should the police not arrest the suspect. *United States v. Vandergroen*, 817 Fed. Appx. 420, 422-23 (9th Cir. 2020).[1] In *Vandergroen*, the court additionally noted that this authorization extends to instances where the officers have handcuffed the suspect during the protective search of the person and vehicle. *Id.* Finally, it is important to note that the totality of the circumstances must be taken into account and where certain facts support reasonable suspicion, if others might dispel or negate that suspicion, those must also be taken into account. *Thomas v. Dillard*, 818 F.3d 864, 877 (9th Cir. 2016).

## III.   Discussion

The Government argues that the officers search of the vehicle to check for and disarm the gun was authorized under the officer safety exception described by *Terry* and *Long*. (Doc. 21 at 9-10). The Government asserts that the officers were

---

[1] Per USCS Ct App 9th Cir, Circuit Rule 36-3 and Fed. R. App. P. 32.1, unpublished orders such as *Vandergroen* are nonprecedential but are appropriate to cite to the courts of the Ninth Circuit for their persuasive value.

justified in removing the firearm and unloading it to ensure their safety once Defendant returned to the truck. (Doc. 21 at 10). Because the identification of the shotgun as impermissibly shortened came from the valid protective search, the Government argues the gun was lawfully discovered and seized.

Defendant asserts that the protective search was unjustified because officers had no reason to believe he was dangerous, and no other exception applies. (Doc. 17 at 17-18). Defendant asserts that his conduct, both before and during the encounter with officers, could not support any reasonable belief that he was dangerous or that the firearm posed a threat to the officers' safety.

The parties disagree as to the precise meaning of armed and dangerous as applied to protective searches under *Terry* and subsequent caselaw. The Government argues that the officers merely needed to have a reasonable belief that Defendant was armed to legitimately search the weapon and make it safe. Defendant argues that, to justify a protective search, the officers needed an objectively reasonable belief that Defendant was likely to be dangerous, in addition to being armed. Defendant's approach is too formulaic. In *Long*, relied upon by Defendant, the Supreme Court concluded that a protective search of the vehicle was warranted by the time of night, the driver's excessive speed, and the suspect's apparent intoxication. 463 U.S. at 1050. None of these factors goes to the suspect's inherent dangerousness, but rather the dangerousness of the situation as a

whole. The court stated that the touchstone of the analysis is the reasonability of the particular governmental invasion given all the circumstances. *Id.* at 1051 (quoting *Terry*, 392 U.S. at 19).

The higher the likelihood that a suspect is armed, the more dangerous an encounter may become. In *Terry*, the Supreme Court grounded its analysis in reasonability, stating that a search for weapons is justified by the "interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could *unexpectedly* and fatally be used against him." 392 U.S. at 23 (emphasis supplied). The purpose of the protective search is practical; it allows an officer to pursue his work safely. In other words, it is grounded in the dangerousness of the situation taken in its entirety. *See Orman*, 486 F.3d at 1176-77; *Ramirez v. City of Buena Park*¸560 F.3d 1012, 1021-22 (9th Cir. 2009).

Hilde responded to the noise complaint alone and in the middle of the night. He approached the vehicle and was startled to see a weapon sitting on the seat next to Defendant. Hilde knew Defendant was armed and would gain immediate access to the gun upon returning to the car. This strongly favors the reasonability of the search and disarming of the weapon. The presence of a loaded firearm strongly increases the danger of an encounter turning fatal. This supports the conclusion, as articulated in *Orman*, that it was reasonable for the officers to temporarily seize the

6

gun to ensure officer safety during and immediately after the encounter. *See United States v. Shipley*, 2017 U.S. Dist. LEXIS 83194, \*5-6, 2017 WL 2350166 (2017 D. Ariz.). This is different than situations where there is no indication a suspect is armed or even cases where an officer's only basis for a frisk is a bulge that could indicate a weapon. *See United States v. Flatter*, 456 F.3d 1154, 1157-58 (9th Cir. 2006) (discussing the range of circumstances in which the Ninth Circuit has permitted protected searches). Where a suspect is highly likely or known to be armed, a protective search is more prudent, and therefore more likely to be permissible. Here, given the totality of the circumstances, including the time of night, the weapon being easily within arms' reach, and the limited steps required to make the situation reasonably safe, the Court concludes that the protective search of the vehicle to secure the firearm was objectively reasonable, and therefore permissible.

## IV.   Conclusion

For the reasons stated above, the Defendant's Motion to Suppress (Doc. 16) is DENIED.

DATED this 30ᵗʰ day of August, 2022.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge